In the Matter of **ALLIED WOOD PROD-UCTS COMPANY, Bankrupt.**

**No. 1937.**

United States District Court
M. D. North Carolina.

April 4, 1956.

Horace Haworth, Arthur Utley, Jr., High Point, N. C., for trustee in bankruptcy.

Welch Jordan, Joseph Carruthers, Jr., R. Kennedy Harris, Greensboro, N. C., R. E. Whitehurst, New Bern, N. C., for creditors.

HAYES, District Judge.

Five chattel mortgagees have excepted to the report of the Referee on his conclusion of the law that these mortgages do not constitute valid liens because they were not recorded in Forsyth County. The applicable Statute of North Carolina is G.S. § 47–20.2(b) (3) which is quoted in the foot note.[1]

---

1. "§ 47–20.2. Place of registration; personal property.

\* \* \* \* \* \* \*

"(b) To be validly registered pursuant to G.S. 47–20, a mortgage of personal property must be registered as follows:

\* \* \* \* \* \* \*

"(3) If the mortgagor is a domestic corporation:

"a. Which has a principal office shown by its certificate of incorporation or other similar document filed with the Secretary of State or by its legislative charter, the mortgage must be registered in the county where the principal office is located according to such certificate or charter.

"b. Which has no such office so shown but does have a principal office in this State, the mortgage must be registered

The Referee interpreted subsection a. to mean that a chattel mortgage would have to be recorded in the county where the certificate of incorporation designated the location of a principal office. The Statute became effective Jan. 1, 1954 prior to that the Section merely required the mortgage of personal property to be recorded in the county where the mortgagor resides but with this phrase added "for the purposes mentioned in this section the principal place of business of a domestic corporation is its residence." § 47–20.

Allied Wood Products Company was incorporated under the laws of North Carolina on February 6, 1953 and its certificate of incorporation filed with the Secretary of State and recorded in the office of the Clerk of Superior Court of Forsyth County on February 11, 1953 by its charter designated the location of a principal office in the city of Winston Salem, County of Forsyth and contained this clause, "but it may have one or more branches or places of business out of the State of North Carolina as well as in said State." The corporation operated its business and had its principal office on Junia Avenue, Winston Salem, N. C. until on or about November 11, 1953.

On November 11, 1953 its officers decided to close out the place of business and office at Winston Salem and to locate in High Point, Guilford County, North Carolina. On November 19, 1953 at a meeting of the Directors held in High Point the Board of Directors ratified and approved the action of the officers of the corporation in obtaining a lease for the location of its office and place of business on Oak St. in High Point, N. C., for the removal of the plant and business from Winston Salem, Forsyth County to High Point, Guilford County. They authorized the general manager to enter into a lease for the property for two years on Oak St., High Point, N. C., and to secure an option to extend said lease for an additional two years.

The officers of the bankrupt never filed with the Secretary of State any notice of a change of location of its principal office from Winston Salem to High Point. Since November 11, 1953 the corporation actually has had its principal and only place of business at High Point and its only office has been at its place of business at 317 Oak St.

All meetings of stock-holders and directors since that date have been held at its office in High Point including the filing of the voluntary petition in bankruptcy on October 21, 1955.

The five chattel mortgages in question and the petition in bankruptcy recited that its home office and principal place of business was located at 317 Oak St. High Point, N. C. It was engaged in manufacturing lumber cores and dimension stock.

While so engaged in the manufacturing business there during the years 1954 and 1955 it purchased personal property to be used in connection with its manufacturing business and executed mortgages or conditional sales contracts to secure its indebtedness. The personal property was to be used there. The total indebtedness secured by the five chattel mortgages is $36,540. It is important that at the time these mortgages were

in the county where such office is located when the mortgage is executed.

"c. Which does not have a principal office in this State but has any office in this State, the mortgage must be registered in every county in this State where any such office is located at the time the mortgage is executed. Where such mortgage is registered in one or more of such counties, but is not registered in every county required under this subsection, it shall, nevertheless, be ef-

fective as to the property in every county in which it is registered.

"d. Which has no office in this State, and no principal office is shown by its certificate of incorporation or legislative charter, the mortgage must be registered in each county in this State where any of the mortgaged property is located when the mortgage is executed, in order to be effective as to the property in such county."

executed the. corporation actually had no other place of business nor no other office than the one at 317 Oak St. High Point, N. C.

The Referee was of the opinion that the designation of the principal office of a domestic corporation in its charter remains the location of its principal office until it is changed in accordance with G.S. § 55–34 where the meetings of its directors should be held. G.S. § 55–105. He also considered G.S. § 44–78(3) with reference to the notice of assignments of accounts which provides that "if a domestic or domesticated corporation, in the county wherein said corporation has its statutory principal place of business in this State." Reference was also made to G.S. § 1–79. "For the purpose of suing and being sued, the principal office of a domestic corporation, as shown by its certificate of incorporation pursuant to G.S. § 55–2 is its residence." And in this way he reached the conclusion that § 47–20.2(b) (3) subsection a. applied and required the registry of the documents in Forsyth County.

■ We are unable to agree with this conclusion on the part of the Referee. Undue emphasis has been placed on collateral sections dealing with corporations which are of great importance in determining the place of residence of a corporation and where it may sue or be sued.

It is to be observed that the registration statute in so far as it affects a domestic corporation no where suggests or states anything about the residence of a corporation. On the contrary paragraphs a., b., c. and d. are designed for the specific purpose of identifying different factual situations in order to determine the proper county in which to register a mortgage of personal property. Whereas the old Statute specified the residence of a domestic corporation for purposes of the registration Act would be where the principal place of business of the corporation was located.

■ Subsection a. in effect says that if the mortgagor has a principal office

shown by its certificate of incorporation, the mortgage must be registered in the county where the principal office is located according to such certificate. This clearly contemplates that a domestic corporation may have more than one principal office or many offices and indeed the charter here in question specifies that it may establish other offices in or out of the State. But both subsections b. and c. clearly indicate that a. is inapplicable if the corporation does not in fact have an office which it has disclosed in its charter at the time of the execution of the mortgage. The first clause of paragraph b. when properly interpreted means if the corporation has no such principal office as shown to be in the charter but does have a principal office in this State, the mortgage must be registered in the county where such office is located when the mortgage is executed. It would be a very strict and strained construction to say that that clause means that if the charter does not state the location of an office, then the mortgage must be registered in the county where the office is located when the mortgage is executed. To adopt this construction would render meaningless subsections b., c. and d. It is to be observed that subsection c. makes no reference whatever to the charter nor to an office designated in the charter, but provides that if the corporation does not have a principal office in this state but does have any office in this state the mortgage must be registered in every county in this State where any such office is located at the time the mortgage was executed.

It would be unreasonable to ignore the specifications of subsections b., c. and d. which are directed to the conditions which prevail *when the mortgage is executed*. The conditions at the time of the execution of the mortgage are controlling and a proper interpretation of the entire Act can not be obtained by ignoring the conditions prevailing when the mortgage is executed. It results therefore, that these mortgages were properly recorded in Guilford County because

at the time they were executed the corporation's only place of business and only office were located in Guilford County and they would have to be recorded there under both subsections b. and c. in order to be valid liens.

It seems more reasonable and plausible to say that the important first clause under paragraph b. should be interpreted to mean that the corporation which has no such "principal" office as is shown in its charter, then the mortgages must be recorded in the county where it has an office in fact whether that be the principal office or another type of office thus bringing into operation subsections b. and c. Subsection a. requires the registration of a mortgage in the county where the corporation in fact has a principal office and which is shown in its charter, regardless of how many offices it may have elsewhere or of their nature. But where as here the corporation has no office whatsoever nor any place of business in Forsyth County at the time of the execution of the mortgages and does have its principal and only place of business in High Point where its only office is located, it seems reasonable to conclude that creditors would investigate the records of Guilford County for the existence of any liens and that Guilford County would be recognized in commercial practice as the only place of business of the corporation and the county in which its mortgages should be recorded.

If High Point is the location of the only principal office, subsection b. requires registration in Guilford County. If the office in High Point is not a principal office but is an office, then subsection c. requires its registration in Guilford County.

The foregoing interpretation gives meaning to each section of the Statutes and harmonizes so as to make each section effective for the purpose of carrying out the provisions of the Statutes. It accords with the statutory construction by the Supreme Court of North Carolina in Walker v. American Bakeries Co., 234 N.C. 440, 67 S.E.2d 459, 461, which approves the rule that " 'The various provisions of an act should be read, so that all may, if possible, have their due and conjoint effect without repugnancy or inconsistency, so as to render the statute a consistent and harmonious whole.' " The court should adopt a construction which best expresses the intention of the legislature. Mullen v. Town of Louisburg, 225 N.C. 53, 33 S.E. 2d 484. Where any ambiguity exists the court would consider the language of the statute, mischiefs sought to be avoided, and remedies intended to be applied, and, if words permitted, adopt a construction which would not lead to unjust, oppressive or absurd consequences. Roberson v. Greenleaf Johnson Lumber Co., 153 N.C. 120, 68 S.E. 1064; Young v. Whitehall Co., 229 N.C. 360, 49 S.E.2d 797. This accords with the rule announced by Judge Parker in his very able opinion in the case of In re Boggs-Rice Co., 4 Cir., 66 F.2d 855; Hill v. Gerber, 1 Cir., 24 F.2d 514, interprets a statute nearest like that of North Carolina and deals with facts quite similar to this case and justifies our interpretation.

The cases relied on by the Referee and counsel for the Trustee were resolved on the basis of the residence of the bankrupt and its effect upon registration, while in this case the legal or statutory residence of the corporation is not controlling—if applicable in any manner.