VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT 05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 21-CV-03987



In re D.B.

### Decision on Attorney Fees and Administrator Fees

Deborah Baker died in a motor-vehicle collision. Her sister, Nancy Kemp, was appointed as administrator of her estate, and Ms. Kemp hired Atty. Melvin Fink to represent the estate on a contingent-fee basis in pursuing a wrongful-death claim against the tortfeasor. Atty. Fink recovered $200,000 from various insurers, and two-thirds of the net proceeds were classified as wrongful-death damages (paid to next-of-kin Stephen Ryan, who is Ms. Baker's son), and one-third of the net proceeds were classified as survivorship damages (paid to the estate). At issue now is determining the amount of attorney fees and administrator fees that should be deducted from the total recovery before the proceeds are paid out to the next of kin and to the estate. *In re Estate of Brown*, 129 Vt. 230, 232–33 (1971).

As the court previously expressed, it is not clear how this determination should be made. In *Estate of Brown*, the Vermont Supreme Court explained that the estate administrator should show "either that [they] had entered into an agreement upon fees with counsel in the case" and that the agreement had been "fair" and was "satisfactorily carried out," or that "the compensation sought for the legal services rendered was a reasonable one under the circumstances." 129 Vt. at 233 (citing *Platt v. Shields*, 96 Vt. 257, 268–69 (1923)). This standard appears to contemplate that the amount of fees deducted from the total recovery should be the amount of fees earned under the contract between the attorney and the estate, so long as that amount is reasonable.

Yet this standard predated the development of the "lodestar" calculation. As such, in the court's prior entry order, the court questioned whether the determination in this case should be made according to (1) the standard announced in *Estate of Brown*, (2) the lodestar calculation, (3) a "lodestar cross check" upon the amount of the contingent fee, or (4) some other method. *In re D.B.*, No. 21-CV-03987 (Vt. Super. Ct. Aug. 26, 2024) (Corbett, J.).

The parties did not meaningfully argue which standard should be used. One recent superior-court decision is available, in which the court used the standard from *Estate of Brown* in determining the amount of attorney fees that should be awarded. The depth of discussion was limited, however, because the parties in that case did not object to the amount of the proposed award. *Shaffer v. Northeast Kingdom Human Services, Inc.*, No. 21-CV-01117, 2024 WL 4328616 (Vt. Super. Ct. July 19, 2024) (Richardson).

An important consideration is that the lodestar formula, though widely used, is really a rule about fee shifting. The idea of the lodestar calculation is that the court should determine the amount of attorney fees that a losing party must pay to a prevailing party in order to vitiate some salutary objective. See *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022) (Calabresi, J.) (explaining that the lodestar formula calls upon courts to act as "arbiters of reasonableness between the opposing interests of prevailing plaintiffs and losing defendants") (internal quotation omitted). The lodestar calculation is not a rule about how an attorney should be compensated when performing the duties contemplated by a contingent-fee contract. Nor is it a rule about how attorneys should be compensated when representing estates in wrongful-death actions.

A second important consideration is that contingent-fee representation is expressly permitted by the Vermont Rules of Professional Conduct. Rule 1.5 provides that attorney fees "may be contingent on the outcome of the matter for which the service is rendered."[*]  In any contingent-fee contract, the amount ultimately paid to the attorney must still be evaluated for reasonableness, with reference to: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." Vt. R. Prof. Conduct 1.5(a) & (c). Although these factors overlap with similar factors considered under a lodestar calculation, the evaluation is not controlled by a calculation of hours and rates, with subsequent adjustments upwards or downwards, but rather by the overarching question of "whether a particular contingent fee is reasonable." Vt. R. Prof. Conduct 1.5, cmt. [3]; see also *Fields*, 24 F.4th at 853 (explaining that, in a case involving the evaluation of a contingency fee to be paid by the attorney's own client, "a court's primary focus should be on the reasonableness of the contingency agreement in the context of the particular case" rather than "an hourly rate determined under lodestar calculations") (internal quotations omitted).

In this case, evidentiary hearings on the attorney-fee award were held on October 2, 2024, November 7, 2024, and December 19, 2024. A preponderance of the credible evidence presented at those hearings established that:

> (1) acting upon recommendations from family members, the estate administrator hired Attorney Fink to prosecute the estate's claim for damages arising out of wrongful death;

> (2) the estate administrator chose a contingent-fee structure after considering other alternatives that were adequately and thoroughly explained to her, including an hourly-fee structure;

---

[*] There are some circumstances in which contingent fees are not permitted, but those circumstances do not apply to this case. There is no prohibition in the rule on contingent-fee representation in wrongful-death cases, and the parties have not cited the court to any "other law" that would prohibit an attorney from representing an estate on a contingent-fee basis. The credible evidence presented during the evidentiary hearings established that, in Vermont, contingent-fee representation of estates in wrongful-death claims was generally ordinary and reasonable.

(3) the estate administrator made this choice for reasons related to availability of funds in the estate to pay a retainer and to preservation of estate assets, and the estate administrator made the choice after speaking with another attorney who offered a similar fee structure;

(4) the estate administrator agreed to pay Attorney Fink "[a] contingent fee computed as . . . 33 1/3% of amounts recovered;"

(5) the terms of the contingent-fee contract authorized Attorney Fink to "deduct and retain his attorney's fee out of the proceeds of the final recovery;"

(6) there are other ways of structuring contingent-fee agreements, including tiered approaches, but a contingent fee of 33 1/3% is a reasonable and appropriate fee that is well within the bounds of professional reasonableness in Vermont for representation of an estate in a wrongful-death action;

(7) Attorney Fink obtained a recovery that was the maximum possible under the applicable insurance policies; and

(8) the estate administrator was very pleased with the results obtained.

In the court's view, these findings meet the standard articulated by *Estate of Brown* and by Rule 1.5 of the Vermont Professional Conduct Rules. The administrator entered into an agreement upon fees with experienced counsel, the agreement was thoroughly explained to the client, the contingent-fee structure and percentage were reasonable for the representation of an estate in a wrongful-death action, the results obtained were the maximum recovery possible under the applicable insurance policies, and the estate administrator was satisfied with the results. For these reasons, the court is persuaded that the collection of a 33 1/3% fee in this case was fair and reasonable.

The determination is not without some reservations. During the extended evidentiary presentation, Attorney Fink and the estate administrator made questionable representations about the amount of time expended on certain tasks. Some of those representations were either not credible or not reasonable: the timing and frequency of the requests for medical records and police records, for example, and the amount of time expended upon certain phone calls, were either misremembered or terribly inefficient. Another reservation was the court's belief that a different attorney might have made a downward adjustment to the contingent fee under the circumstances presented.

Nevertheless, the discrepancies and reservations do not cause the court to make any downward adjustments to the amount of the contingent fee, for several reasons. The first is that the process of a conducting a lodestar evaluation may have distorted incentives. In a contingent-fee case, the goal is to maximize the results for the client, rather than to spend a certain number of hours on a case. If time was spent inefficiently, it was not done for any purposes relevant to successful, fair, and reasonable performance of a contingent-fee contract.

The second reason is that performing a lodestar calculation would essentially rewrite the agreement that was actually reached between the estate administrator and the attorney. If the court were to conclude that the lodestar calculation should be used in these circumstances, the court would be effectively saying that contingent-fee contracts are not permissible when an attorney represents an estate in a wrongful-death action pursuant to 14 V.S.A. § 1492. The court would instead be saying that compensation is available only in the form of a reasonable hourly fee. Neither party has suggested that

such a rule exists. Again, this case is not about fee-shifting, but about determining whether an attorney is entitled to an earned contractual fee.

The third reason is that, while a different attorney might have made different choices about whether to reduce the fee in light of the expedience with which the results were obtained, the expert testimony did not establish that an attorney would have been professionally required to do so under the circumstances presented here, nor that the choices made by Attorney Fink were professionally unreasonable.

For these reasons, the court concludes that Attorney Fink's contingent fee was fair and reasonable under the circumstances, and under the standards articulated by *Estate of Brown* and the Vermont Professional Conduct Rules. The amount of the fee is approved as $66,666.66.

The court is also responsible for reviewing the fees requested for the estate administrator. Here, the standard used by the estate administrator involved the reasonable number of hours expended, and the reasonableness of the rate. The estate administrator estimated that she spent 100 hours performing tasks for the estate, but she did not keep any records of the time spent, nor the specific tasks performed. The court does not find the number of hours to be supported by a preponderance of the evidence. For this reason, the court accepts the number proposed by defendants: fifty hours of time.

The estate administrator also suggested a rate of $50 per hour. There was no basis for the proposed rate. For this reason, the court does not find the hourly rate to be supported by a preponderance of the evidence, and accepts the number proposed by defendants instead: $30 per hour.

The approved administrator's fee is therefore $1,500.00.

The court previously issued a stipulated order for partial distribution. Plaintiff is requested to submit within ten days of the file-stamped date of this decision a proposed form of distribution for the amounts described herein. Defendant may file any objection within ten days thereafter.

Electronically signed on Friday, February 21, 2025 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Alison M. Johannensen
Assistant Judge

Vermont Superior Court
Filed 02/25/25
Windsor Unit